UNITED STATES DISTRICT COURT

for the EASTERN DISTRICT OF VIRGINIA

RECEIVED DEC 10 2025 CLERK, U.S. DISTRICT COURT RICHMOND, VA

FILED DEC 18 2025 CLERK, U.S. DISTRICT COURT RICHMOND, VA

3:25cv1036

DERICKSON LAWRENCE
    Plaintiff

v.

FISERV INC.
    Defendant

BOTH INC. dba GOLDEN CORRAL
    Defendant

COMPLAINT

Respectfully submitted on November 25, 2025

*[signature]*

Derickson Lawrence  Reg ID 71243-510
FCI Butner Medium I
PO Box 1000
Butner, NC 27509-1000

Derickson Lawrence                Plaintiff
      v.
Fiserv                            Defendant

Both Management services, Inc.    Defendant

## TABLE OF CONTENTS

|  | Pages |
|---|---|
| I. Introduction | 1 |
| II. The Parties | 1 |
| III. Jurisdiction & Venue | 2 |
| IV. Grounds | 2 |
|     7. Violation of Virginia's Business Conspiracy Statute |  |
|     8. Breach of Implied Covenant of Good Faith | 4 |
|     9. Tortious Interference with Business Contract | 5 |
| V. Legal Standard | 6 |
| VI. Damages | 7-9 |
| VII. Statute of Limitations | 10 |
| VIII. Prayers for Relief | 10 |

.....

## TABLE OF EXHIBITS

| | | |
|---|---|---|
| Exhibits Nos. | 1A, 1B, 1C, 1D | Indictment; Fiserv's Witness Impact Statement |
| Exhibits Nos. | 2A, 2B | Evidence of Plaintiff's restitution assigned to Fiserv |
| Exhibits Nos. | 3A -1 to 3A -4 | Money Access Services processing agreement / STAR processing |
| Exhibits Nos. | 3B | Notice of Breach |
| Exhibits Nos. | 4A1; 4A2 | Digital PayPal Platform |
| Exhibits Nos. | 5, 6A, 6B | Fiserv's Conduct |
| Exhibit No. | 7 | "Hard to Ignore" |
| Exhibit No. | 8 | Accounts Payable Flow Chart (Fiserv over-debiting) |
| Exhibit No. | 9 | 374 Cardholders (Sept. 2019) |
| Exhibit Nos. | 10A, 10B, 10C, | Evidence of over-debiting |
| Exhibit No. | 11 | Fiserv over-debiting - $167K |
| Exhibit No. | 12 | Fiserv over-debiting - post termination of contract -$10K |
| Exhibit No. | 13 | GC - Business Contract and Expectancy |
| Exhibit No. | 14 | Fiserv - Letter of Termination |
| Exhibit Nos. | 15A, 15B | Pay Pal transactions |
| Exhibit No. | 16 | Golden Corral - Settled (PPP loan fraud allegation) $750K with US Att's office |
| Exhibit No. | 17 | GC - Draft Services Agreement |

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF VIRGINIA

November 25, 2025

| | |
|---|---|
| Derickson Lawrence | Plaintiff |
| v. | |
| Fiserv Inc. | Defendant |
| | |
| Both Management Services. Inc | Defendant |

COMPLAINT

I. INTRODUCTION

1. Here comes plaintiff, Derickson Lawrence, Pro Se, in forma pauperis status, who files this complaint against defendants - Fiserv Inc. and Both Management Services, Inc. (doing business as Golden Corral) herein after referred to as (GC) - to seek to recover compensatory damages (economic and non-economic) of $3 million, and punitive damages of $125 million, arising out of: a) the two defendants' tortious conduct, which violated Virginia Business Conspiracy Statute (Va. Code Ann. Section 18.2 - 499, 500); b) Fiserv's breach of Virginia's law underpinning implied covenant of good faith; and c) Fiserv's tortious interference with Plaintiff's then existing and business expectancy contract with GC.

II. THE PARTIES

2. Plaintiff

Derickson Lawrence, former CEO of MarketView Resources, Inc. (MarketView) - a New York based corporation, which provided enhanced debit card-based payroll services to Both Inc. (GC) for 15 years- 2004 to 2019.

3. Defendant No. 1

Fiserv a Wisconsin corporation acquired STAR/First Data in July 2019. It is a global leader in financial services technology, providing among other services, electronic payment processing product and services to a variety of financial institutions. As a $20 billion revenue company in 2024 -Wall Street Journal-, the corporation's partnership with MarketView gave Plaintiff's organization a national reach as it allowed GC cardholders to: a) receive their debit cards, shipped by Fiserv, to GC store locations in Virginia; b) access their payroll from Fiserv's STAR/First Data ATMs in Virginia and other states; c) to make purchases at retail stores and gas stations in Virginia and across the country.

4. Defendant No. 2

Both Management Services, Inc (Both Inc.) doing business as Golden Coral (GC) is a Virginia corporation with its principal place of business at 1453 Kempsville Rd. Suite 107, Virginia 23464.

Page 1

III.   JURISDICTION AND VENUE

5. Subject-Matter Jurisdiction
Plaintiff asserts subject-matter jurisdiction is conferred by 28 USC Sections 1331, 1332 and 1367. And further asserts that diversity of citizenship among the parties is complete, as interpreted by Wisconsin Dept. of Corrections v. Schact, 524 US 381, 388, 118 S. Ct. 20147,2052, 141 L. Ed. 2d 364 (1998). "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizen of the same state." Section 1367- The District Court has supplemental jurisdiction over the state law tort claims " that are so related to claims in the action within (the district court) original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution." 18 USC Section 1367.

6. Venue
Plaintiff asserts because the court has diversity of jurisdiction and supplemental jurisdiction over state claims, the choice of law rules of the forum state (i.e. Virginia) apply. Insteel Indus., Inc. v. Costanza Contracting Co., 276 F. Supp. 2d 479, 483 (E.D. Va. 2003). Plaintiff also asserts that Virginia applies the Lex Loci delicti doctrine by the law of jurisdiction where the tort occurred as interpreted by Jones v. R.S Jones & Assocs. 246 Va. 3431 S.E. 2d 33,34 9 Va. Law Rep. 1410 (va.1993). Alternatively, venue is proper and this court has personal jurisdiction because defendant No.2 (GC) is domiciled in Virginia (Va.);and, defendant No.1 (Fiserv) has been shipping debit cards to GC employees in Va. for (15) years; and purposefully availed itself of this forum, which formed the basis of the claim (IV. 7(a)) below.

IV.   GROUNDS

7. VIOLATION OF VIRGINIA'S BUSINESS CONSPIRACY STATUTE.
Plaintiff asserts, defendant Fiserv is liable for treble damages under Virginia's Business Conspiracy statute for:

a) Conspiring with defendant GC to be listed as a fraud victim alongside GC to bolster GC's claim of wire fraud in the indictment of Plaintiff in the Eastern District of Virginia, August of 2023 - See Exhibit Nos.1A; 1B and 1C.

b) The purpose of collecting payment via restitution for an alleged breached of contract with plaintiff's organization MarketView for the amount of $88,807. See Exhibits Nos. 2A and 2B.

c) Willfully, and maliciously injuring Plaintiff's business, reputation and profession. Plaintiff further asserts that both defendants "combined together to effect a preconceived plan and unity of design and purpose," (i.e., achieving the goal of getting the plaintiff convicted of fraud) and therefore satisfy the violation of the business conspiracy statute as interpreted by Bay Tobacco, LLC v. Bell Quality Products, LLC, 262 F.Supp.2d 483, 499 (E.D. Va. 2003).

d) Acting in concert (see 7(a) above) to cover up the wrongful conduct in Grounds 8, and 9 as follows.

7. VIOLATION OF VIRGINIA'S BUSINESS CONSPIRACY STATUTE ..Continued

(e) Fiserv is listed as a fraud victim in Plaintiff's Presentencing Report. See Exhibit No.1C; and in Plaintiff's Sentencing Order. See Exhibit Nos. (2A and 2B).

(f) Fiserv acknowledged after Plaintiff's conviction, however, that it (Fiserv) was not a victim by submitting a "Witness" Impact Statement ( Exhibit No. 1D) rather than a "Victim" impact Statement, which was requested. Plaintiff asserts that Fiserv's issuance of a Breach of Contract Notice to Plaintiff (See Exhibit No. 3B was clear and convincing evidence that it always had knowledge that it was not defrauded by Plaintiff. This is evidence that Fiserv wrongfully, maliciously, and recklessly, acted "with disregard to the rights of this Plaintiff." Jimenez v. Daimlerchrysl Corp., 269 F.3d 439, 450-51 (4th Cir. 2001).

(g) Plaintiff asserts that punitive damages are appropriate here. Assessment of recklessness is proper only if wrongful "act is committed in such a manner that a person of ordinary prudence would say that it was a reckless disregard of another person rights." Hicks v. Mc Candlish, 2221 S.C. 401. 70 S.E.2d 629, 631, (1952).

(h) Plaintiff is also seeking intentional or reckless infliction of emotional distress claim via trial. Whether defendants' conduct may be reasonably be considered outrageous is a legal question, whether conduct is in fact outrageous is a question for jury determination. Id. O'Dell v. Stegall, 226 W. Va. 590, 703 S.E.2d 561, 594 (W. Va. 2010).

8. BREACH OF IMPLIED COVENANT OF GOOD FAITH

Plaintiff asserts pursuant to the then contractual agreement between Plaintiff and Concord EFS-STAR/Money Access Exhibit Nos.3A-1 to 3A-4 (acquired by First Data in 2004) that Fiserv breached its implied covenant of good faith and fair dealing by acting unfairly, arbitrarily and in bad faith as interpreted by Enomoto v. Space Adventures, Ltd., Supp. 2d 443 450 (E.D Va. 2009) when Fiserv:

(a) Terminated Plaintiff's access to its STAR/First Data customer service platform (Sept 2019) --just six weeks after Fiserv completed its acquisition of STAR/First Data -- by imposing a reduction of Plaintiff's access level, from a Level 5 (full service) to a Level 2 (view only). This was a core component of its Notice of Breach: Exhibit No. 3B; This exercise of discretion by Fiserv was intended to undermine the quality of service that Plaintiff provided to GC. This caused irreparable reputational harm to Plaintiff's customer service, shortly after the hard launch of Plaintiff's migration of GC cardholders away from Fiserv's STAR/First Data analog platform to the new digital PayPal platform. Exhibit No. 4A -inserted into GC's handbook "notice to all stores"; In Exhibit No. 5, Plaintiff pleaded for a "return to Level 5", as this unprecedented, surprising and wrongful act had a wrecking ball effect on the 15-year business relationship with GC and the cardholders during the Notice of Breach cure period.

(b) Rejected all Plaintiff's other cure attempts included the submission of a payment plan on Sept. 24, 2019, Exhibit No. 6A; follow up calls to Fiserv to confirm receipt of the plan; and follow up conversation with Fiserv the next morning after the shutdown (Sept. 25, 2019 )(Exhibit No. 6B) - all to no avail.

c) Extended and exceeded its pattern of acts of bad faith to other categories of service where defendant Fiserv had sole control. In the same month (September 2019), Fiserv repeatedly made service delivery commitments of debit cards to Plaintiff, which was relayed to GC and those series of commitments from STAR/First Data were not honored -the first time in (15) fifteen years. See GC's notice to Plaintiff regarding poor quality of service stating, "Service issues like this are very hard to ignore.": Exhibit No. 7. No.7 also includes Plaintiff's response to GC.

(d) Individually and cumulatively, reprehensible conduct (a, b and c) in a period of thirty days -- some six weeks after its completion of its acquisition of FirstData Star-- went beyond recklessness to intentional and malicious.

(e) Overbilled and debited Plaintiff's "0898" account [causing the shortfall - the basis of the criminal indictment ] by greater than 4000 % for at least three years. See Exhibit No.8 -Accounts Payable Flow Chart. The over-debiting in the chart is supported by Defendant's Fiserv data below obtained through discovery in Plaintiff's criminal case- February 2024. The outrageous example of 4000% disparity in billing, in Sept 2019, is throughout 2019. Plaintiff had a

total of 374 cardholders in Sept 2019. (See Exhibit No.9). Yet, Fiserv billed and debited Plaintiff's "0898" account for card maintenance AND royalty fees for 17,223 cardholders. (See Exhibit Nos. 10A, 10B, and 10C). Plaintiff asserts the overbilling went unnoticed for ten(10) years because of the "rolled up" fee structure. That damage is estimated to exceed $167,000 dollars: Exhibit No.11.

(f) Continued billing the Plaintiff post termination of the contract --from October 2019 to March 2020 --for services that Fiserv did not deliver and Plaintiff did not receive. The total amount is estimated at $10,000.(Exhibit No.12)

9. TORTIOUS INTERFERENCE WITH BUSINESS CONTRACT AND EXPECTENCY
Plaintiff asserts that defendant Fiserv interfered with Plaintiff's business contract (and expectancy) with GC when it engaged in improper methods by engaging in direct conversations with then client GC (e.g., "undue influence, duress, overreaching and misuse of confidential information") Lewis-Gale Med. Ctr., LLC v. Alldredge, 282 Va. 141,170, S.E.2d 71, 720 (Va. 2011) which led GC to terminate the relationship with plaintiff.

(a) Plaintiff asserts Defendant's caused the breach to remove Plaintiff as "the middle man" to directly pitch GC on Fiserv's range of services (e.g., point of sales (POS) cashier stations, credit terminal and processing services and merchant services.)

(b) Plaintiff further asserts GC terminated the migration of the cardholders to the PayPal digital platform because of the debacle relative to customer service failures described in the foregoing items No. 8 (a) and (c); and terminated the business relationship because of the shortfall caused by foregoing items No. 8 (e) and 9 (a).

(c) Plaintiff had an existing business relationship with GC for 15 years. Plaintiff's organization served 22 franchise stores, with an eye towards (long term) other franchise stores and some 300 corporate stores. Exhibit No.13-A, 13-B, 13-C.

(d) Fiserv became aware of that potential business when it completed its acquisition of STAR/FirstData in July 2019, as STAR/FirstData had been producing, delivering the debit cards to those 22 franchise stores and providing the network ATM access to the cardholders.

(e) Plaintiff initiated a pilot of the Pay Pal digital service in 2017. Fine-tuned it based on cardholder feedback (2018-2019); hard-launched the service (i.e integrate it into GC's handbook for all employees in Aug. 2019. Exhibit Nos. 4A-1; 4A-2; 4A-3.)

(f) Fiserv's Notice of Breach and termination of Plaintiff's contract were both in the month of September 2019. & Exhibit No. 14,
(g) Post shut-down of Fiserv's legacy analog platform [September 24, 2019 at 3:00 p.m. EST] Exhibit No. 15A - a truncated set of Fiserv transactions - show evidence of cardholders accessing their funds via the Pay Pal digital platform, on Sept. 25, 2019, as the alternative to Fiserv ATM machines . And Exhibit 15B, shows that GC

Page 5

requested an accounting of those digital Pay Pal transfers which occurred after Fiserv shutdown its ATM network.

e) Plaintiff asserts this evidence (g) confirms that: a) the two systems were independent; and b) the migration of cardholders to the Pay Pal digital platform, away from the old analogy card/ATM system of Fiserv, would have continued, but for Fiserv interference.

## V. LEGAL STANDARD

10. Business Conspiracy. Virginia Code Section 18.2-499 provides that "any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (1) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever shall be jointly and severally guilty of a Class 1 misdemeanor." Section 500(A) of the statute provides for a civil remedy with treble damages, costs of suit and attorney's fees. Va. Code Section 18.2 -500(A). Fed. R. Civ. P. 9(b) as interpreted by Field v. GMAC LLC, 660 F. Supp. 2d 279, 689 (E.D. Va. 2008) (requiring a Section 18.2-4999 claimant to state in detail the identities and the roles of the conspirators that acted in concert.

## VI. DAMAGES

11. Legal standard. "Actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." Dunlap v. Cottman Transmission Sys. LLC, 287 Va. 207, 754 S.E.2d 313, 317 (Va. 2014) (citing Beck v. Prupis, 529 U.S. 494, 501, 120 S.Ct., 608, 146 L.Ed.2d 561 (2000)).

12. Plaintiff asserts the following:
   (a) Plaintiff was physically and emotionally harmed as a result of the two defendants' conduct, as interpreted by Miller v. City of West Columbia, 322 S.C. 224, 471 S.E. 2d 683, 687 (1996).

   (b) Plaintiff suffered economic and non economic damages, on an amount exceeding $3 million to be determined at trial.

   (c) Plaintiff endured defamation, damage to reputation, loss of income from consultancy1, emotional distress, which would reasonably be expected to flow from Plaintiff being convicted, then shackled (hands and feet) then led away to be confined; and then eight months later sentenced to 87 months. Plaintiff was shocked by the revocation of bail immediately after conviction. Then struggled with the reality of being cuffed in his suit, fitted with a chain around his waist and shackles around his ankles. Plaintiff was escorted out of the court room. The emotional distress of not knowing the next phase, as he was being led down a narrow winding set of stairs and trying not to trip (with ankles shackled), was overwhelming. Plaintiff had never been arrested before. The stairs led to a four by four holding cell at the bottom of the court house. After approx. four hours, the clanking of keys broke the silence. That emotional distress was heightened, as plaintiff was led to the back of van with no windows, and two other men already seated. Other than being convicted, not knowing the backgrounds of the men had a chilling effect; there was no way to alert the drivers should something go wrong. Being encumbered with all extremities in hand cuffs and shackles linked together by a waist chain, made for a harrowing ride experience. The true distress is bouncing around because there are no seat belts. The fate of Freddie Gray of Baltimore (April 2015) dominated Plaintiff's thoughts in that moment - with no ability to hold on- as he prayed for the ride to end. Gray was found unconscious in the back of the van - and later died of his injuries. That emotional distress haunted plaintiff weeks and months after the experience. It was revived every time there was 2:00 am wake up call to be moved, with not knowing why or where. Plaintiff lost 55lbs in less that 5 months after being incarcerated.

13. FINANCIAL VULNERABILITY
(a) The United States Supreme Court has recognized that certain parties are necessarily more vulnerable to defamation than others and, therefore, entitled to greater protection. See Wolton v. Reader's Digest Ass'n, 443 U.S.

Page 7

157, 164, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979). In the instant case, Plaintiff's resources paled in comparison to vast resources (financial and technology) of both defendants. Fiserv's revenue topped $20 billion in 2024, according to the Wall Street Journal. Defendant No.2 (GC) a private company, through information and belief, had greater than $100 million in revenue for 2024. Plaintiff's forma pauperis2 status is referenced below in the foot note. The defendants' actions destroyed Plaintiff's name without the ability to combat the injury done to his reputation. Plaintiff was disadvantaged in every respect. This set of injuries accrued when the news of Plaintiff's conviction hit cable news, network news and print media on the East coast, on March 22, 2024. The options available to Plaintiff was the Federal Public Defender's office. He had no means, especially after incarceration, to rectify the damage or to force the defendants' to rectify it.

(b) Plaintiff has appealled3 his conviction pro se, and files this civil claim pro se, in forma pauperis status from prison.

(c) Plaintiff asserts a Fourth Circuit decision in Saunders v. Branch Banking and Trust Co. of Virginia, 526 F.3d 142 (4th Cir. 2008) is relevant. In that case, a jury awarded Saunders $1000 in statutory damages, plus $80,000 in punitive damages. Id at 147.

(d) The Fourth Circuit affirmed the award despite the 80:1 ratio of punitive to actual damages. In Saunders, the court noted the only factor supporting a finding of reprehensibility was plaintiff's financial vulnerability. To be clear, unlike Saunders, the instant case involve additional factors. For example, Plaintiff asserts that the defendants acted maliciously, and Plaintiff suffered economic and emotional distress. Notwithstanding, the court further emphasized "the third factor (financial vulnerability) is certainly present; and a single factor can provide justification for a substantial award of punitive damages."

14. DEFENDANTS' RELEVANT CONDUCT WAS NOT ISOLATED.

The following show two examples for Fiserv; and one for GC.
(a) MEA Financials Enters. LLC. v. Fiserv Sols., Inc. No. 3:13-cv-054041-BP, 2013. MEA brought six counts against Fiserv. Among them: i)Breach of Contract; ii)Breach of implied covenant of good faith and fair dealing; iii) tortious interference with contracts and business expectancy, iv) fraudulent misrepresentation.

(b) Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC: :July 14, 2020.
Claims stated were: i) Fiserv repeatedly issued erroneous invoices to Bessemer; and ii) charged for services that did not function properly. iii) "Bessemer sent a notice of termination of the Master Agreement to Fiserv on April 11, 2018. compl. paragraph 152, ECF No. 48; Fiserv continued to send involves to Bessemer after the notice of termination."

(c) Qui Tam: The United States government settled a a qui tam action against Golden Corral or Both

Page 8

Page 9

Management Services relating to claims that the company made false statements in order to obtain PPP loans. The company paid $750,000 to obtain a release of claims by the United States. See Exhibit No. 16.

### 15. FISERV IS A DERERENT-PROOF DEFENDANT

(a) Fiserv's past relevant conduct, in 14(a) and (b), is telling. As such, it is firmly rooted that in promoting deterrence, the economic wealth of a tortfeasor may be considered. TXO, 509 U.S. 443,462, 113 S.Ct. 2711 125 L.Ed. 2d 366 & n.28. A bigger award in necessarily needed to "attract the.. attention" of a large corporation. Continental Trend Resources, Inc., 101F.3d 634, 641 (10th Cir. 1996).

(b) According to Business Wire, Fiserv posted $16 billion in GAAP revenue for the first nine months in 2025.

(c) The Supreme Court has stated that a departure from the original ratio constraints is particularly appropriate where "for example, a particularly egregious act has resulted in only a small amount of economic damage. Gore, 517 U.S. at 582. In the instant case, item No.8 (e), the 4000% billing disparity is one example. Items No.7 and No. 9 are others.

(d) Plaintiff asserts that item No.7 was egregious and intentional and was committed to cover up the outrageous conduct of items No.8 and No.9. And that defendant Fiserv and GC were culpable.

(e) Plaintiff further asserts, in order to serve as a deterrence as guided by cases like Saunders and Johansen, given the economic wealth and status of Fiserv as compared to the Plaintiff, a departure from the traditional ratio is warranted. The wealth disparity is simply the consideration that demands proportionality in the magnitude of the punishment.

### 16. SUMMARY -- $3.087 million

a) Economic Loss Consultancy -$100K -2024; $120K - 2025 = $220K Total   See FN(1)

b) Economic loss Breach of Implied Cov. 10 yrs   = $167K Total   See Exhibit Nos. 8 & 11

c) Economic loss Tortious Interference.   = $100k Total   See Exhibit No. 13

d) Non -Economic Emotional Distress -- via trial   =$2.6 mill Total

---

FN-(1) Loss of income -Case 2:23-cr-00089-JAG-LRL - Doc. 72 Filed 04/25/24, pages 4 & 5; item No.8 Plaintiff completed deliverable to client (Policies and Procedures Document - Feb. 2024) with expectancy of Phase II- recommendations.
  FN (2) Forma Pauperis- Case 2:23-cr-00089 -JAG-LRL-Doc. 138, page 18, item 99.
  FN (3) Oral Argument- Plaintiff's case is on the Fourth Circuit Court of Appeals calendar (December 2025).k

## VII. STATUTE OF LIMITATIONS

17. The statute of limitation for business conspiracy in Virginia is 5 years. Va. Code Section 8.01-243, Detrick v. Panalpina, Inc.,108 F.3d 529, 543 (4th Cir. 1997).

(a) The action that gives rise to all claims and resulting damages is business conspiracy. Plaintiff asserts the defendants tortious actions (items 7,8 and 9) came to light only after receiving the discovery data in the criminal case 2:23-cr-00089 (February 2024).

(b) In addition, Plaintiff asserts that he was barred from access to FirstData tools and production data when Fiserv changed his level of access from a Level 5 to a Level 2, when the Notice of Breach was issued. See Exhibit No. 3B. This effectively tolled the statute on all claims until February 2024 when he received Fiserv's data during discovery.

(c) Notwithstanding, all other claims (i.e., items No.8 and No.9) are governed under Virginia's 5 year statute of limitation. Dunlap v. Cottman Transmissions Sys, LLC, 287 Va. 207, S.E. 2d 313 (Va. 2014).

## VIII. PRAYERS FOR RELIEF

18. Wherefore, Plaintiff requests judgement against defendants for:

(a) Treble the amount of economic and non economic damage sustained by Plaintiff. See Section VI.

(b) Punitive damages as highlighted in Section VI.

(c) An amount of attorney's fees and costs and expenses, as appropriate.

(d) interest as permitted by law.

(e) any other relief the court deems appropriate.

Additionally, Plaintiff requests:

(f) a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedures.

(g) for leave of the court for additional time to reply to defendants' response, if Plaintiff is not represented by counsel at the time of response, or if Plaintiff is still incarcerated.

Respectfully submitted on November 25, 2025

Derickson Lawrence -- Reg ID. 71243-510
FCI Butner Medium I
PO BOX 1000
Butner, NC 27509-0000

Cc: Both Inc. dba Golden Corral
1453 Kempsville Rd #107
Virginia Beach, VA, 23464
Attn: Mr. Houston Odom, Jr., President

cc: Fiserv
    Corporate Legal Dept.
    Attn: Mr. Bram Mavarent, Esq
    4000 Cora Ridge Drive
    Coral Springs, FL 33065.