

FILED
IN OPEN COURT

DEC 1 3 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

Exhibit 1A

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 2:23cr89 |
| v. | ) | |
| | ) | Wire Fraud |
| DERICKSON LAWRENCE, | ) | 18 U.S.C. § 1343 |
| | ) | (Counts 1-9, 11) |
| Defendant. | ) | |
| | ) | Mail Fraud |
| | ) | 18 U.S.C. § 1341 |
| | ) | (Count 10) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C) & |
| | ) | 28 U.S.C. § 2461 |
| | ) | Criminal Forfeiture |
| | ) | |

## SUPERSEDING INDICTMENT

### DECEMBER 2023 TERM – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Superseding Indictment, unless otherwise stated:

### GENERAL ALLEGATIONS

1. Beginning in and around February 2016 and continuing through in and around December 2019, in the Eastern District of Virginia and elsewhere, defendant, DERICKSON LAWRENCE, devised a scheme and artifice to defraud, and obtain money and property by means of false and fraudulent pretenses, representations, and promises.

2. During the relevant time period, Victim Company operated several franchises of a national restaurant chain in Virginia and conducted business out of an office in Virginia Beach, Virginia.

Exhibit No. 1B

11.   In and around December 2018, defendant began receiving notices from STAR that there were insufficient funds in the Settlement Account to cover the use of the Marketview debit cards by the Victim Company's employees.   On or about September 13, 2019, STAR notified defendant that unless an outstanding balance of over $80,000 was paid within ten days, STAR would terminate its agreement and cease processing card transactions.   On or about September 24, 2019, STAR terminated the agreement, ceased funding debit card transactions, and recommended that Marketview "immediately notify its cardholder clients."

**Lawrence, Derickson**                                                                              **Page 11**
**Docket No. 0422 2:23CR00089-001**

Exhibit 1C

46.    For sentencing guidelines purposes, the defendant is attributed with a total loss amount of $575,057.17. ($460,000.00 Golden Corral employees' loss + $88,8.17 FISERV debt + 26,250.00 PPP loan amount + = $575,057.17)

**Victim Impact**

47.    The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense.

48.    The victims in this case are the Golden Corral employees, BOTH, Inc., and FISERV; however, at the time of the disclosure of this report, no statements have been received.

~~Derickson is a victim in the~~ instant offense. For the purpose

Exhibit No. 1D

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| *Norfolk Division* UNITED STATES OF AMERICA<br><br>v.<br><br>DERICKSON LAWRENCE,<br><br>Defendant. | Criminal No. 2:23-cr-089 |

## WITNESS IMPACT STATEMENT OF FISERV, INC.

Fiserv, Inc., by and through its internal counsel, Bram A. Maravent, offers this brief witness impact statement in the above-referenced matter.

Mr. Lawrence, as CEO of his company Marketview, Inc., provided paycards to employees of several restaurants, which allowed these restaurants' employees who elected to use the cards to withdraw cash at ATMs or make purchases at stores, much like a traditional debit card. Fiserv provided these services to Mr. Lawrence's Marketview company in exchange for his paying monthly transaction fees, network fees, and other fees associated with the transactions made by those employees. Marketview was also required to have a relationship with a sponsorship bank as part of its agreement with Fiserv.

Over the course of time, Marketview lost its sponsorship bank and did not notify Fiserv; additionally, Marketview failed to pay $88,807.17 associated with paycard transactions Fiserv covered and a small amount of owed fees Fiserv also absorbed. Based on Marketview's lack of a sponsorship bank and its failure to pay fees, Fiserv was forced to terminate the parties' agreement. To date, Marketview has not made whole Fiserv for the $88,807.17 in fees and transactions it has absorbed when Marketview failed to fund them.

Respectfully submitted,

Bram A. Maravent
Managing Counsel, Fiserv

Exhibit No. 2A

## ATTACHMENT A TO RESTITUTION ORDER

| Victim: | Loss Amount: |
|---|---|
| BOTH, Inc. dba Golden Corral<br>1453 Kempsville Road #107<br>Virginia Beach, Virginia 23464 | $~~117,023.62~~ $106,386.18 |
| FISERV<br>Corporate Legal Department – Litigation & Risk<br>Attn: Bram Maravent, Esq.<br>4000 Coral Ridge Drive<br>Coral Springs, Florida 33065 | $ 88,807.17 |
| *TO BE PAID LAST AFTER ALL OTHER VICTIMS RECEIVE RESTITUTION*<br><br>U.S. Small Business Administration<br>Office of Disaster Assistance Processing and<br>Disbursement Center<br>14925 Kingsport Road<br>Forth Worth, Texas 76155 | $ 26,250 |
| Total due from defendant: | $ ~~232,080.79~~ |

$ 221,443.35

4

**J.A. 1289**

AO 245B (Rev. 09/19) (VAE 6/3) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

Case Number:       2:23CR00089-001
Defendant's Name:   LAWRENCE , DERICKSON

Exhibit No. 2B

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 1,100.00 | $ 221,443.35 | $ | $ | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| BOTH, Inc. dba Golden Corral<br>1453 Kempsville Road #107<br>Virginia Beach, Virginia 23464 | | $106,386.18 | |
| FISERV<br>Corporate Legal Department – Litigation & Risk<br>ATTN: Bram Maravent, Esq.<br>4000 Coral Ridge Drive<br>Coral Springs, Florida 33065 | | $88,807.17 | |
| U.S. Small Business Administration<br>Office of Disaster Assistance Processing and<br>Disbursement Center<br>14925 Kingsport Road<br>Fort Worth, Texas 76155 | | $26,250.00 | |
| TOTALS | | $221,443.35 | |

☐ Restitution amount ordered pursuant to plea agreement

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the Judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The Court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the ☐ fine ☒ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.
Payments of Restitution are to made payable to the Clerk, United States District Court, Eastern District of Virginia.

J.A. 1295

Exhibit 3A-1 *Old Contract*

*201758*

# MONEY ACCESS SERVICE® PROCESSING AGREEMENT

This MONEY ACCESS SERVICE Processing Agreement ("Agreement") is dated *August 17, 2001,* 2001 by and between MONEY ACCESS SERVICE INC. with offices located at 1100 Carr Road, Wilmington, Delaware 19809 ("MAS", "we" or "us") and MARKETVIEW RESOURCES INC. with offices located at 149 Esplanade, Suite 100, Mt. Vernon, New York 10553 ("User" or "you").

### Background

MAS provides Electronic Fund Transfer processing for automated teller machine, point of banking and point of sale Terminals and accessed by using certain plastic cards with magnetically encoded stripes issued by financial institutions to their account holders allowing such account holders to perform certain banking, financial and purchase Transactions. Additionally, MAS offers services for the authorization of Transactions and provides Gateway services to various EFT Networks, as well as certain other EFT services ("MAS Processing Services"). User desires to purchase and use MAS Processing Services.

NOW, THEREFORE, in consideration of the mutual premises herein contained, MAS and User agree to be legally bound by the terms of this Agreement as hereinafter set forth.

1.    DEFINED TERMS.

All capitalized terms used in this Agreement and not otherwise defined herein shall have the meanings set forth in Exhibit A attached hereto and made a part hereof.

2.    MAS PROCESSING SERVICES.

You hereby agree to use MAS as the processor of Transactions conducted by your Cardholders and/or at your Terminals. You understand and agree that MAS may provide the services hereunder through any of its affiliates. While you are a User of MAS Processing Services under this Agreement, you elect to interface with MAS in one of the following modes:

_✓__ Full Service
_____ Authorization Processor
_____ Cooperative Authorization Processor
_____ Intercept Processor
_____ Independent Sales Organization (ISO)

You understand and agree that the mode you elect now for your Interface to MAS will govern you for the duration of this Agreement. You may elect to use any or all of the following MAS Processing Services set forth below; however, you agree that during the term of this Agreement we shall be the exclusive provider to you of any of the services described below which you elect:

(i)    MAS Authorization Services. In accordance with your Cardholder information you will supply to us, we will authorize or decline Transaction requests received from any Terminals at which your Cardholders have access or any Networks in which you participate by our comparison to your Cardholder information which can consist of any of the following: (a) real time account records, (b) daily account balances or (c) parameter instructions.

(ii)    MAS Terminal Driving Services. We will establish a direct electronic connection between the ATM and/or POB Terminals you operate and our switch in order to operate, supervise and monitor such Terminals for you.

(iii)    Gateway Services. We will provide electronic connections from the switch to other Network switches and other card issuers which will permit you to acquire ATM, POB and/or POS Transactions of other Networks' and/or issuers' Cardholders at Terminals we operate for you and to facilitate Transactions by your Cardholders, if any, at the ATM, POS or POB Terminals of other Networks. You may choose among the Gateway services we inform you we are able to provide. If you elect to purchase any of our Gateway services from us you will appropriately complete and execute applications, membership agreements, sponsorship agreements or other documents as may be necessary to offer such Gateway services as may be required by us or the relevant regional or national ATM Network or card issuer, and shall provide to us evidence of your authority to participate in such Networks or with such card issuers, as we may require from time to time.

(iv)    Additional Services. We also offer an array of additional MAS Processing Services from which you may select to complement your Electronic Fund Transfer products. These Processing Services include telephone banking, bill payment, self service banking and Cardholder service charge products. You shall indicate your selection of additional MAS Processing Services on the Specification Forms you

8/13/01

Prsng2.doc
04/16/96

1

FISERV CONFIDENTIAL

GOVERNMENT
EXHIBIT
200
2:23cr89

USAO-MKVW_007154

J.A. 2914

Exhibit 3A-2

16.    EFFECTIVE DATE AND TERM.

This Agreement shall be effective as of the date indicated in the introductory paragraph hereof provided that it is fully executed by us in original form and the payments required hereunder have been delivered to us. The initial term of the Agreement shall be five (5) years from the date our services commence under this Agreement and, thereafter, for successive one (1) year renewal terms unless terminated in accordance with paragraph 17 herein.

17.    TERMINATION.

This Agreement may be terminated in its entirety by either party at the end of the initial term or any subsequent term upon one hundred eighty (180) days' prior written notice to the other party. In the event you breach this Agreement causing an early termination or terminate this Agreement prior to the expiration of its term, you agree to pay an early termination fee in an amount equal to the product of your average monthly fees times the number of months left in your current term.

18.    AMENDMENTS.

This Agreement may be amended only by a writing duly executed by both parties.

19.    ENTIRE AGREEMENT.

This Agreement, including all schedules, addenda and exhibits hereto, constitutes the entire understanding between the parties as to MAS Processing Services and supersedes all previous communications, commitments and writings.

20.    SEVERABILITY.

If any provision of this Agreement is held invalid, illegal, void or unenforceable by reason of any judicial decision, all other provisions of this Agreement shall nevertheless remain in full force and effect.

21.    WAIVERS.

No course of dealing or failure to enforce any provision or exercise any right under this Agreement by either party shall be construed as a waiver of such provision or right, affect the validity of this Agreement or curtail the ability of any party to enforce such provision or exercise such right in the future.

22.    NOTICES.

All notices by one party to the other under this Agreement shall be in writing and shall be considered delivered when actually received or three (3) days after placement in the U.S. Postal Service, whichever is sooner. Notice shall be sent to each party at the addresses set forth in the first paragraph of this Agreement. Either party may change the address for notices at any time by providing written notice of such change to the other party.

23.    HEADINGS.

The titles and headings which precede the text of this Agreement have been inserted solely for convenience of reference and contain no substantive meaning.

24.    APPLICABLE LAW.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

In Witness Whereof, the parties hereto have executed this Agreement by their duly authorized representatives on the date first written above.

MONEY ACCESS SERVICE INC.

By: _____

E.T. Haslam
Name and Title (Printed) CFO

MARKETVIEW RESOURCES INC.

By: _____

DERICKSON K LAWRENCE, PRESIDENT, CEO
Name and Title (Printed)

_____
User Identification Number

Prsng2.doc
04/16/96
FISERV CONFIDENTIAL

5

USAO-MKVW_007158

J.A. 2918

Exhibit 3A-3

## STAR® PROCESSING AGREEMENT
## ADDENDUM
## FOR
## ADDITIONAL PROCESSING SERVICES
## GATEWAY SERVICE

This Addendum is dated _August 17th_, 2006 by and between STAR PROCESSING, INC., with offices located at 1100 Carr Road, Wilmington, Delaware 19809 ("SPI", "we" or "us") and MARKETVIEW RESOURCES INC. with offices located at 149 ESPLANADE, SUITE 100, MT. VERNON, NY 10553 ("User" or "you") and shall supplement, amend and become part of the STAR Processing Agreement dated _August 17th_, 2006, between SPI and User ("SPI Processing Agreement").

### Background

In addition to the SPI Processing Services set forth in the SPI Processing Agreement, SPI offers other services which facilitate the processing of Transactions ("Additional Processing Services"). User elects the Additional Processing Services described herein.

NOW, THEREFORE, in consideration of the mutual premises herein contained, SPI and User agree to be legally bound by the terms of this Addendum as hereinafter set forth.

### 1. DEFINED TERMS

All capitalized terms used in this Addendum and not otherwise defined herein shall have the meanings set forth in the SPI Processing Agreement or Exhibit A thereto.

### 2. GATEWAY SERVICE

You hereby select and we hereby agree to provide you with Gateway Services to the Networks designated by your initials below:

_____ Cirrus/ MasterCard __/__ Cards ___ ATMs
_✓_ PLUS/ VISA __✓✓__ Cards ___ ATMs
_____ American Express Card

_____ Discover Card
_____ NYCE
_____ Maestro U.S.A. Inc.
_____ Interlink
_____ Allpoint
_✓_ Other (Specify) _STAR_
_____ Other (Specify)_____

At all times during the provision of Gateway Services with respect to each Network and consistent with User's category of participation in each Network, User will remain an active member, participant, card issuer or acquirer of Transactions in good standing with each Network that User accesses through the Gateway Service.

### 3. OTHER USER RESPONSIBILITIES

You are solely responsible for complying in all respects with the rules, regulations, bylaws and/or standards of the other Network(s) to which we provide Gateway Service pursuant to this Addendum and with applicable laws and regulations affecting User's cards, Terminals and Transactions. Notwithstanding any other provision of this Agreement, SPI shall have no responsibility for losses caused, in whole or in part, by the error or delay of User in complying with applicable laws or regulations or Network rules, regulations, bylaws or standards in initiating or responding to chargebacks, representments, adjustments, and every other category of fees presently existing and hereafter imposed in connection with inquiries or other Network error resolution processes.

### 4. FEES

For the Additional Processing Services described in this Addendum, you agree to pay SPI the applicable fees in accordance with the schedule of fees set forth on Exhibit GS-1 hereto. You will be solely responsible for all other Networks' membership and other fees, charges, assessments, fines, penalties and every other category of fees presently existing and hereafter imposed in connection with your participation in, or processing or settlement of Transactions in such Network through the Gateway Service. We will pay you on a net basis, fees we

FISERV CONFIDENTIAL

USAO-MKVW_007190

**J.A. 2950**

21.    WAIVERS.

No course of dealing or failure to enforce any provision or exercise any right under this Agreement by either party shall be construed as a waiver of such provision or right, affect the validity of this Agreement or curtail the ability of any party to enforce such provision or exercise such right in the future.

22.    NOTICES.

All notices by one party to the other under this Agreement shall be in writing and shall be considered delivered when actually received or three (3) days after placement in the U.S. Postal Service, whichever is sooner. Notice shall be sent to each party at the addresses set forth in the first paragraph of this Agreement. Either party may change the address for notices at any time by providing written notice of such change to the other party.

23.    HEADINGS.

The titles and headings which precede the text of this Agreement have been inserted solely for convenience of reference and contain no substantive meaning.

24.    APPLICABLE LAW.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

In Witness Whereof, the parties hereto have executed this Agreement by their duly authorized representatives on the date first written above.

STAR PROCESSING, INC.

By: _____

STEVEN RUNKLE
Name and Title (Printed)    SVP, FINANCE

MARKETVIEW RESOURCES INC

By: _____

ERICKSON V6 LAWRENCE, CEO
Name and Title (Printed)

603780
User Identification Number

FISERV CONFIDENTIAL

USAO-MKVW_007181

J.A. 2941

First Data
*now* fiserv.

Exhibit No. 3B

September 13, 2019

Derickson Lawrence                    **Sent via email only** *dkl@marketvw.com*
MarketView Resources
149 Esplanade, Suite 100
Mt. Vernon, NY 10553

Re:    STAR Processing Agreement with STAR Processing, Inc.
       Notice of Breach and Cure Period

Dear Mr. Lawrence:

The purpose of this letter is to provide notice of MarketView Resources' breach under the STAR Processing Agreement with STAR Processing, Inc. ("Agreement"). Since August 2018, STAR Processing, Inc. (now known as First Data Processing, Inc.) attempted to process both daily settlements on card transactions and to collect fees for those transactions; on multiple occasions, these ACH debits rejected for insufficient funds (collectively the "Settlement Obligation"). To date, the outstanding Settlement Obligation is $88,807.17, an accounting of which is attached to this letter in Exhibit A.

As you know, under the Agreement, MarketView has an ongoing obligation to establish and maintain a clearing account at a financial institution and agreed to maintain at all times in the clearing account a balance sufficient to pay all amounts due and owing to STAR Processing. *See Section 6 – Clearing Account*. These multiple rejects breach the terms of the Agreement.

We value our partnership with MarketView Resources and wish to give to you time to cure the outstanding balance within ten days from the date of this letter. Until this breach is cured, First Data Processing will be removing your User Management Role in STAR STATION® Portal and Card Management & Authorization access is now limited to Level 2. Additionally, Dodd Attisani did not have a User Management Role; however, access to Card Management & Authorization is now limited to Level 2 as well.

If the breach is not cured within 10 days by payment in full of the outstanding Settlement Obligation of $88,807.17, we will no longer fund any further transactions, terminate the Agreement, and take any other legal action necessary to secure First Data Processing's rights. Any further breach of the Agreement beyond the outstanding Settlement Obligation, including but not limited to further rejected debits for daily settlements or fees, will result in immediate termination of this Agreement and any other legal action required to secure First Data Processing's rights under the Agreement.

If you wish to make payment, please immediately contact Scott Trevino to make arrangements at (7
C        ''   .com.

This letter is not a waiver of First Data Processing's rights under the Agreement or applicable law, and First Data Processing reserves all rights under the Agreement and applicable law. PLEASE GOVERN YOURSELF ACCORDINGLY.

Sincerely,

/s/ Bram A. Maravent
Associate Counsel
(954) 845-4261
Bram.Maravent@Fiserv.com

FISERV CONFIDENTIAL

10329650-FISV-000337
USAO-MKVW_008420

J.A. 3158

Exhibit 4A-1

 MARKET VIEW™ MARKET VIEW RESOURCES INC.



## Help Yourself to Happiness®

### Go from enhancing to transforming the pay experience....

# WELCOME.

**Pricing List**

1. Premier Card Monthly Fee
   Fee = No Charge

2. Merchandise Purchase Fee w/ Cash Back
   Fee = $1.00

3. ATM Withdrawal Fee (within U.S.)
   Fee = $2.50

4. ATM Balance Inquiry Fee
   Fee = $0.75

5. Balance Inquiry via Customer Service 1.888#
   Fee = $3.00

6. Web Balance Inquiry
   Fee = No Charge

7. New Premier Card
   Fee = $10.00

8. Premier "Card-to-PayPal" Transfer Fee
   Fee = $7.00

9. Replacement Fee (5-7 business days)
   Fee = $17.50

## You are ALL SET!

Your card is already activated for ATM or POS.
Your PIN # is the last 4 digits of your Social Security #

## Get mobile TEXT ALERT on deposit with balance

Here's how:

1. Sign up for your user name and password using your 10–digit account number 4449xxxxxx (check card sleeve)

2. Go to *http://www.marketvw.com*

3. Click on Sign In, then scroll down and click "Mobile-Friendly.."

4. Choose MarketView Cardholder and click on first time user to create your Username and Password

5. If you have already created Username and Password, enter, then click on "Text Alert Signup"

6. Enter your Cell number (twice) and then click on your mobile vendor via the drop-down menu

## Or use your MarketView Card Online with PAY PAL

..and start enjoying secure, easy, online shopping! Book vacation, airline travel, UBER, car rental at Hotwire.com, Hotels.com, and reserve seats at the movies via Fandango.com!

  PayPal   UBER

 This new service is now available for all MarketView Premier Cardholder

GOVERNMENT EXHIBIT
133a
2:23cr89

The MarketView Premier Card: No monthly charges /lower fees than competitors'
Customer Service: 888-905-4440  *www.marketvw.com*

Catalogue # 42009411

J.A. 1497

FIND

| | |
|---|---|
| **From:** | "Derickson K. Lawrence" |
| **Sent:** | 8/13/2019 8:06:51 PM |
| **To:** | |
| **CC:** | |
| **Subject:** | pay card in handbook |
| **Importance:** | Normal |
| **Attachments:** | Golden Corral August 2019.jpg |

Hi Pam:

I had meant to send this yesterday.

The attached is for the employees' handbook. It can be printed in 8 X 10

Note that we have rolled back the new card fee to the $10.00. This was the price in 2015.

Derickson

Exhibit No. 5



MARKET VIEW RESOURCES INC.

149 The Esplanade, Suite 100
Mount Vernon, NY 10553
www.marketvw.com

| | |
|---|---|
| Phone direct | +1 (888) 905-4440 Ext 351 |
| Fax direct | +1 (888) 905-4440 |
| E-Mail direct | dkl@marketvw.com |
| Date | September 16, 2019 |

Mr. Bram A. Maravent
First Data - Fiserve
1100 Carr Road
Wilmington, Delaware 19809

*Sent via email only* ███████ *@fiserv.com*

**RE: STAR Processing Agreement with STAR Processing, Inc. Notice of Breach and Cure Period**

Dear Mr. Maravant:

We are in receipt of the above referenced letter of Friday, September 13, 2019.

Including in Friday's letter was a reference to action taken to reduce the only two administrators from a Level 5 to a Level 2 status. This action, without prior notice, has not only significantly downgraded our ability to respond to our customer needs within the referenced cure period, it has literally rendered MarketView to "View Only" status over the past three days. This has caused short-term reputational harm, and will cause defection, hindering our ability to cure.

In an effort to cure the stated action referenced in the September 13, 2019 letter, we ask for:

1. Extension of sixty days on the financial action;  and
2. A return to the status of Level 5, which allows for the ability for
   o    PIN change
   o    Status cards (order new and  close inactive)
   o    Application of manual credits  under $100

Unfortunately, there are further Ach credit returns which will be resolved at the end of week Sept 20, 2019.

I will reach out to you this afternoon for a short conversation in an effort to arrive at an agreement going forward.

Sincerely,

Derickson K. Lawrence
Chief Executive officer
MarketView Resources Inc.

FISERV CONFIDENTIAL

10329650-FISV-000231

USAO-MKVW_008203

**J.A. 3163**

Exhibit 6A



MARKET VIEW RESOURCES INC.

149 The Esplanade, Suite 100
Mount Vernon, NY 10553
www.marketvw.com

| | |
|---|---|
| Phone direct | +1 (888) 905-4440 Ext 351 |
| Fax direct | +1 (888) 905-4440 |
| E-Mail direct | dkl@marketvw.com |
| Date | September 24, 2019 |

Mr. Bram A. Maravent
First Data - Fiserve
1100 Carr Road
Wilmington, Delaware 19809

*Sent via email only* **bram.maravent@fiserv.com**

**RE: STAR Processing Agreement with STAR Processing, Inc. Notice of Breach and Cure Period**

Dear Mr. Maravant:

This letter is to follow up my response letter of September 16, 2019 (Letter) in an attempt to cure the notice of breach to MarketView Resources. That Letter provided notification of new ach debt, and time of a cure; as well as, a request or an extension of sixty days to make the payments; in addition to the reinstatement of Level - 5 access for an administrator to continue to maintain our previously established level customer service.

Subsequent to the Letter we received email inquiries regarding Star Sponsorship.

To address the Star Sponsorship first, that process typically takes anywhere from nine to 12 months to complete. Given that time line, we are asking for a repayment plan to be extended along the search and implementation period of a sponsorship bank. Accordingly, the first two payments will be made in the month of October 2019 with the balance in the following order:

| | | | |
|---|---|---|---|
| Oct-19 | $7,000 | FEB--2020 | $11,000 |
| Nov-19 | $8,000 | April --2020 | $15,000 |
| Dec-19 | $10,020 | May --2020 | $10,000 |
| Jan-20 | $10,000 | JUN -- 2020 | $17,000 |

Sincerely,

Derickson K. Lawrence
Chief Executive officer
MarketView Resources Inc.

FISERV CONFIDENTIAL

10329650-FISV-000230

USAO-MKVW_008202

J.A. 3168

| | | |
|---|---|---|
| **From:** | Derickson K. Lawrence | Exhibit 6B |
| **To:** | Trevino, Scott; Maravent, Bram | |
| **Subject:** | [FDC-External]: Wednesday follow up--: Response letter MarketView Rersources | |
| **Date:** | Wednesday, September 25, 2019 10:52:43 AM | |

Hi Bram:

Thanks for the conversation this morning.

To the extent that the aggregate number submitted in our payment offer is not equal to your exact tally, should not be of concern. The payment plan, on a per month basis, will enumerate the items — by the exact dollar amount -- listed in your ACH debt attachment. On that attachment, each will be marked paid successively.

## Derickson

**From:** Derickson K. Lawrence
**Sent:** Tuesday, September 24, 2019 5:26 PM
**To:** Scott Trevino ; Bram Maravent
**Subject:** Response letter MarketView Rersources

Hi Bram: Attached, please find my response letter with payment plan. Second attempt.
Derickson Lawrence

Derickson K. Lawrence
MARKETVIEW RESOURCES, INC
Mt. Vernon, NY 10553

Phone: (888) 905-4440, ext 351
Fax : (888) 905-4440
Direct : (914) 663-5250
www.marketvw.com

CONFIDENTIALITY NOTICE: This e-mail transmission (and/or the
attachments accompanying it) may contain confidential information,
belonging to the sender. The information is only for the use of the intended
recipient. If you are not the intended recipient, you are hereby
notified that any disclosure, copying or distribution of any
information in this transmission, or the taking of any action in
reliance on the contents of this transmission, is strictly prohibited.
Any unauthorized interception of this transmission is illegal under
the law. If you have received this transmission in error, please
promptly notify the sender by reply e-mail, and then destroy all
copies of this transmission. Thank you.

Virus-free. www.avg.com

GOVERNMENT
EXHIBIT
**211**
2:23cr89

FISERV CONFIDENTIAL

10329650-FISV-000229
USAO-MKVW_008201

J.A. 3169

Exhibit No. 7

**Gary Carter**

| | |
|---|---|
| From: | Derickson K. Lawrence <dkl@marketvw.com> |
| Sent: | Friday, September 20, 2019 5:31 PM |
| To: | Gary Carter |
| Subject: | Ressponse: No delivery today |
| | |
| Importance: | High |

Hi Gary:

I understand the gravity of giving ones word. But I won't pretend to understand the level of disappointment felt by the chain of professionals that relied on the expectation set by my word. To that end, as an organization, we fell short.

As you know, we have worked through countless customer service issues over the past 15 years. And we would like to believe that the consistent standard set for service delivery in general, and card service delivery in particular, sets us apart.

We attempted at every turn on Wednesday and Thursday to ensure a successful outcome via assurances from the manufacturer, and was still disappointed today. If there is any consolation, the cards will be delivered to GC's Virginia Beach payroll office tomorrow, by 12 noon. We were unsuccessful in an effort to divert the shipment to the Fullerton, Rossville Blvd, location –final destination for the cards.

The UPS tracking # is 1Z4337244 4518 42042

Derickson

**From:** Gary Carter
**Sent:** Friday, September 20, 2019 4:07 PM
**To:** Derickson K. Lawrence
**Subject:** No delivery today

Derickson:

I know you're not in the business of missing promises, but we did not get cards in the mail today as promised. I gave my word to Kathie Sewell; who gave her word to the mother of Ziarre Boone; who I'm sure told Ziarre that she would have a card tomorrow. Now I am overnighting our check to Ziarre to try to keep this from becoming a DOL complaint.

Service issues like this are very hard for me to ignore.

*Gary W. Carter, CPA*
Senior Vice-President

| GOVERNMENT EXHIBIT |
|---|
| **23** |
| 2:23cr89 |

USAO-MKVW_000148

1

**J.A. 1410**

Accounts Payable Flow Chart                    Exhibit No.8

A)   ECF No 96 P3 ; ECF No 114, P10, #29   $190K

B)   Social Security & other Deposits (main) Exhibit 30  $211

C)   ECF "118" Pages 4, 6 "2016 - 2019" - $73K ; "2010 - 2019" $167K   Post Contract $10K
Gov tr Exhibit 203 — ECF 123 Page 4 "2016 - 2019" - $73K ; "2010 - 2018" $167K   Post Contract $10K

(1)   Sentencing Exhibit #1, P14 line 24  - $150K "2010 - 2019"

(2)   Sentencing Exhibit #1, P7, line 9  - $300K TURNOVER

(3)   Sentencing Exhibit #1 P18, lines 10-17 "inactivity fees"

G: FISERV OVER debited           See Exhibit No. 11, 12           Sentencing

        2010            2016            2019      2020           OX 1
              $93.6K           $73.1K         $10K

Exhibit No.9

FIND

| | |
|---|---|
| **From:** | "Dodd Ellsworth" <dodd@marketvw.com> |
| **Sent:** | 9/28/2019 12:46:57 AM |
| **To:** | dkl@marketvw.com |
| **Subject:** | GC Access |
| **Importance:** | Normal |

I'm only displaying ACCOUNT TRANSACTION/BALANCE information to the 374 carholders who were paid Monday.

 

1) The ts.cfm screens don't show money in any way, so I didn't alter those. That's just adminstrative stuff that has nothing to do with money.

 

2) When GC logs in on the client login page, the only way I see they can access money information is by clicking on store name then clicking a user name. That path now only displays the 374 people.

 

Are there other paths GC can take to access account money info? If so, let me know. I didn't see any others.

**GOVERNMENT EXHIBIT 139** 2:23cr89

AXIOM ITEM ID 1201463

J.A. 2124

ENHANCED

| | COUNT | RATE | SUBTOTAL | TOTAL |
|---|---|---|---|---|
| 211 CARD ROYALTY - DEBIT | 17,261 | $ .025 | $431.53 | $431.53 |
| 768 CARD ALERT SERVICES FEES | 3,427 | $ .0035 | $11.99 | $11.99 |
| 1698 STAR POS ISSUER COMPLIANCE FEE | 443 | $ .013 | $5.76 | $5.76 |
| 2305 SECURITY ADMIN CERT TRAINING | 1 | $15.00 | $15.00 | $15.00 |
| 2300 STAR PRED FRAUD SCORE TRANS FEE | 1,980 | $ .006 | $11.88 | $11.88 |

TOTAL STAR NETWORK FEES                              $880.68

Exhibit No. 10A

REPORT DISTRIBUTION FEES

RECONCILIATION FEES

| 905 RECON FILE FEE - TRANSMISSION | 1 | $82.45125 | $82.45 | $82.45 |
|---|---|---|---|---|

REPORT DISTRIBUTION

| 630 ADDITIONAL PBF TRANSMISSION | 24 | $ .00 | $.00 | $.00 |
|---|---|---|---|---|
| 906 REPORT DISTRIBUTION - RDS | 1 | $54.9675 | $54.97 | $54.97 |

TOTAL REPORT DISTRIBUTION FEES                       $137.42

PROCESSING FEES

CARD DATABASE MANAGEMENT

| 152 CARD MANAGEMENT FEE | 17,223 | $ .08246 | $1,420.21 | $1,420.21 |
|---|---|---|---|---|

R-009-001 603780 - MARKETVIEW RESOURCES INC

Page  3

MONTHLY BILLING STATEMENT
FOR SEPTEMBER 1 TO 30, 2019

MARKETVIEW RESOURCES INC                             PARTICIPANT NO: 603780

| DESCRIPTION | T | COUNT | RATE | SUBTOTAL | TOTAL |
|---|---|---|---|---|---|

PROCESSING FEES

STAR PROCESSING FEES

| 645 ATM TRANSACTION FEES - ISSUED | | 2,697 | $ .07695 | $207.53 | $207.53 |
|---|---|---|---|---|---|
| 647 POS TRANSACTION FEES - ISSUED | | 731 | $ .06596 | $48.22 | $48.22 |

TOTAL PROCESSING FEES                                $1,675.96

ADDITIONAL STAR SERVICE FEES

CARD PRODUCTION

| 503 ATM CARD PROD PASS THRU FEES | | 521 | $1.00 | $520.56 | $520.56 |
|---|---|---|---|---|---|
| 512 CARD COLLECTION ATM | | 62 | $2.094 | $129.83 | $129.83 |

FISERV CONFIDENTIAL

USAO-MKVW_007314

J.A. 3143

| | | | | |
|---|---|---|---|---|
| 143 CARD PREFIX FEE | | 5 | $3.00 | $15.00 | $15.00 |
| 144 STAR STATION MONTHLY FEE – ENHANCED | * | 1 | $150.00 | $150.00 | $150.00 |
| 211 CARD ROYALTY – DEBIT | | 17,239 | $ .025 | $430.97 | $430.97 |
| 768 CARD ALERT SERVICES FEES | | 3,130 | $ .0035 | $10.95 | $10.95 |
| 1698 STAR POS ISSUER COMPLIANCE FEE | | 578 | $ .013 | $7.51 | $7.51 |
| 2305 SECURITY ADMIN CERT TRAINING | | 1 | $15.00 | $15.00 | $15.00 |
| 2300 STAR PRED FRAUD SCORE TRANS FEE | | 2,180 | $ .006 | $13.08 | $13.08 |

TOTAL STAR NETWORK FEES                                                     $854.70

Exhibit No. 10B

REPORT DISTRIBUTION FEES

RECONCILIATION FEES

  905 RECON FILE FEE – TRANSMISSION          1      $82.45125      $82.45      $82.45

REPORT DISTRIBUTION

  630 ADDITIONAL PBF TRANSMISSION          31      $ .00      $.00      $.00
  906 REPORT DISTRIBUTION – RDS          1      $54.9675      $54.97      $54.97

TOTAL REPORT DISTRIBUTION FEES                                             $137.42

PROCESSING FEES

CARD DATABASE MANAGEMENT

  152 CARD MANAGEMENT FEE          17,201      $ .08246      $1,418.39      $1,418.39

R-009-001 603780 - MARKETVIEW RESOURCES INC

Page  3

MONTHLY BILLING STATEMENT
FOR AUGUST 1 TO 31, 2019

MARKETVIEW RESOURCES INC                          PARTICIPANT NO: 603780

| DESCRIPTION | T | COUNT | RATE | SUBTOTAL | TOTAL |
|---|---|---|---|---|---|

PROCESSING FEES

STAR PROCESSING FEES

  645 ATM TRANSACTION FEES – ISSUED          2,325      $ .07695      $178.91      $178.91
  647 POS TRANSACTION FEES – ISSUED          806      $ .06596      $53.16      $53.16

TOTAL PROCESSING FEES                                                     $1,650.46

ADDITIONAL STAR SERVICE FEES

CARD PRODUCTION

FISERV CONFIDENTIAL

USAO-MKVW_007311

J.A. 3140

1-877-866-7827
10/31/2016

MONTHLY BILLING STATEMENT
FOR OCTOBER 1 TO 31, 2016

PARTICIPANT NO: 603780

MARKETVIEW RESOURCES INC
Attn: STAR BILLING CONTACT
149 THE ESPLANADE
SUITE 100
MT. VERNON, NY 10553

ACCOUNT: 2000008789321

ABA: 026012881

Exhibit No. 10C

STATEMENT SUMMARY

| DESCRIPTION | TOTAL |
|---|---|
| | $804.44 |
| STAR NETWORK FEES | |
| | $130.88 |
| REPORT DISTRIBUTION FEES | |
| | $1,445.87 |
| PROCESSING FEES | |
| | $348.22 |
| ADDITIONAL STAR SERVICE FEES | |
| | $8.38 |
| *TAX FOR TAXABLE AMOUNT $100.00 | |
| | $2,737.79 |
| TOTAL AMOUNT DUE | |

THE NET DEBIT APPEARING ON THE STATEMENT WILL BE CHARGED TO YOUR ACCOUNT
ON TUESDAY, NOVEMBER 08, 2016. PLEASE FUND YOUR ACCOUNT.
*CONFIDENTIAL*

R-009-001 603780 - MARKETVIEW RESOURCES INC

Page 2

MONTHLY BILLING STATEMENT
FOR OCTOBER 1 TO 31, 2016

PARTICIPANT NO: 603780

MARKETVIEW RESOURCES INC

| DESCRIPTION | T | COUNT | RATE | SUBTOTAL | TOTAL |
|---|---|---|---|---|---|
| STAR NETWORK FEES | | | | | |
| STAR NETWORK - TRANSACTIONS | | | | | |
| POS SWITCH TRANSACTION FEES - ISSUER | | 1,151 | $ .0325 | $37.41 | $37.41 |
| SWITCH TRANSACTION FEES - ISSUED | | 3,387 | $ .08 | $270.96 | $270.96 |
| STAR NETWORK FEES | | | | | |
| CARD ROYALTY - DEBIT | | 14,369 | $ .025 | $359.23 | $359.23 |
| CARD PREFIX FEE | | 5 | $3.00 | $15.00 | $15.00 |
| CARD ALERT SERVICES FEES | | 4,538 | $ .0025 | $11.35 | $11.35 |
| STAR POS ISSUER COMPLIANCE FEE | | 807 | $ .013 | $10.49 | $10.49 |
| STAR STATION MONTHLY FEE - ENHANCED * | | 1 | $100.00 | $100.00 | $100.00 |
| | | | | | $804.44 |
| TOTAL STAR NETWORK FEES | | | | | |

FISERV CONFIDENTIAL

10329650-FISV-000332

USAO-MKVW_008304

J.A. 3035

Exhibit No. 11                                              Exhibit No. 11

An estimated calculation of Fiserv over- debiting account "0898" from 2010 - 2019 exceed $167K.

1) Exhibit No. 8 shows the payable work flow and debiting process --item "C."

2) Exhibits 10A, 10B and 10C show the source data from Fiserv, obtained during discovery (Feb. 2024).

3) Exhibits 10A and 10B (Sept and August 2019) show Fiserv debiting for card royalty and maintenance fees for 17,233 cardholders. Exhibit No. 9 shows the number of GC cardholders in Sept. 2019 was 374.

4) Sept. 2019 (10A) show a $1851.77 monthly charge

5) Conservative estimates for Fiserv over-debiting "0898" period:

   (i) post termination of the contract --Oct 2019--March 2020 -- Exhibit 12 - $10K

   (ii) 2016, 2017, 2018, plus 9 months in 2019 -- $73.1K

   (iii) years 2010 - 2015                    -    $93.6K

Exhibit No. 12

United States of America

v.

Derickson Lawrence
Defendant

Case No. 2:22-cr-089

(4 of 5)

Memorandum in Support of Addendum (Pleading)

The charts below extracts data from Exhibit 202 in support of Plain Error #1: Fiserv invoiced Marketview for $10K after terminating its Contract.

See Gov. Tr. Exhibit 203          Q1 2020

(Plain Error #4 (5a))    Page Numbers
USAO - MKVW - 007326    March 05 2020    $100

Q1 2020    USAO - MKVW - 007325    Feb 07, 2020    $100
                                                        $1,835.11 → $1,835.11
152 - Card Management    USAO - MKVW - 007322    JAN 08, 2020    ~~$1,895.11~~

152 - 17,222 = $1420.13    (A)    Total    $2,035.11

Gov. Tr. Exhibit 203
Q4, 2017    Page Number 5
USAO-MKVW - 007319    Q4, 2019 Dec 06, 2019 $2,285.32

USAO-MKVW 007316    Nov 05, 2019 $2,343.75

USAO-MKVW 007313    Oct 08, 2019 $3,361.56

(Plain Error #4 (5a))    (B)    Total    $7,990.63

The data extracted from Gov. Tr. Exhibit 203 confirms Fiserv billed Marketview in Q1 2020: $2,035.11 and in Q4 2019: $7,990.63.

$8K + $2K

2010          2016          Sept      Dec      Mar
                            2019 Q4  2019 Q1 2020
                            $8K + $2K

A + B ≈ $10K

J.A. 1191

United States of America
v.
Derickson Lawrence
Defendant

Exhibit No. 13-A    Section II

Business Contract & Expectancy
With Golden Corral (GC)

Case No. 2:23-Cr-89 p16

Exhibit No.13 5a, 5b, 6a, 6b, 7, 8

Plaintiff asserts that the unsigned Draft Services Agreement (Exhibit No.17) was consumated: See 5a, 5b, 6a, 6b, 7, 8.

5a) Pursuant to Craddock v. Le Clair Ryan P.C., Civil Action No. 3:16-co-11 (E.D. VA, April 12, 2016); the Restatement (Second of contract §30 note, "insistence on a particular form of acceptance is often intended and understood as suggestion rather than limitation; then suggested mode is then authorized, but other modes are not precluded. In the instant case, the Exhibit, editled "Draft Services Agreement" the text of final paragraph is as follows: "IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed by their authorized representatives on the date written first above written." Defendant asserts no exclusive means is specified for acceptance. Accordingly, the default rule of acceptance is that, in absence of an exclusive means of acceptance, any reasonable means of acceptance will create a contract. Restatement (Second) of Contracts §65. ["Unless circumstance known to the offeree indicate otherwise, a medium of acceptance is

Exhibit No. 13-B

United States of America
v.
DERICKSON    LAWRENCE          SECTION II          Case No. 2:23-Cr-89 pm
         DEFENDANT

5a continued....

reasonable if it's one used by the offeror. In Craddock, the Court held that
the Agreement "left Craddock free to accept by any manner reasonable
under the circumstances, the next question was whether Craddock's behavior
reasonably demonstrated acceptance and intent to be bound." Defendant
asserts that Marketview and Both Inc. 15years of history as shown in Sections II A,B,C
demonstrates intent to bound.

5b) Moreover, (E.D. Va, Jan 6, 2016) relying on Galloway Corp v. S.B. Ballard Const. Co
250 Va. 493, 505, 464 S.E 2d 349, 356 (1995) "When a recipient knows
or has a reason to know that the services are being rendered within
an expectation of compensation, and by a word could prevent a mistake,
his privilege of inaction gives way - he is held to an acceptance if he fails
to speak." If the resulting action is not merely to a duty to pay for value, but
a duty to pay a performance according to the terms of the offer. As
interpreted by 5(a) and 5b) in the foregoing, defendant asserts, that was a
binding contract between Both Inc. and Marketview Resources after year over
2005 Establishing the BtoB "services" agreement relationship. Based on 5a & 5b,
Marketview had a binding contract with Both Inc.

6) Defendant asserts in May of 2017, that Market View Resources further
demonstrated its intent consistent with the "Draft Services Agreement" based on Item #9.
by pursuing an expansion beyond Both Inc. franchise base with its
new digital service to Golden Corral Corporate and Golden Corral franchisee.—
See government in Exhibits 17 and 114b.

J.A. 1053

United States of America            Exhibit No. 13-C

v.

Ferguson, Lawrence          Section II          Case No. 2:23-cr-89          P18
Defendant

6.) Plaintiff asserts that the new digital service was a self contained application owned by and managed by vendor - PayPal. There were many benefits to extending this option to, the analog STAR/First Data/Fiserve debit card service. Those benefits are shown in 114b, government Exhibit 114b. A requirement of that PayPal application was that cardholder funds/money would have to be transfered directly to PayPal three business days before actual use by cardholder. Therefore, funds/money belonging to cardholder would no longer be in Marketview control.

(to cardholder, as opposed (See Exhibit 4A-1, 4A-2)

7.) Plaintiff asserts that from 2004-2019, Marketview developed a B to B services relationship with Both Inc. ranging from banking services, electronic stubs, 401K administration services, ACH support services, vendor payment services to software "patch" services — Meeting the value proposition stated in Section II B(2)(a) "becoming a full-time resource" - See government In. Exhibit 10. See P13.

8.) Plaintiff asserts that in 2004, B to C transaction-based cardholder represented about 99% of Marketview Business with Both Inc.; and the B to B "services"-based business represented about 1%. By 2019, B to C transaction cardholder-based business had fallen to 5%. By contrast, B to B "services"-based business had increased to 95% - see (). As such, defendant plaintiff asserts that Marketview was "inextricably intertwined" with Both Inc's Day-to-Day activities.

Exhibit No.14

**First Data** is now **fiserv.**

September 24, 2019

Derickson Lawrence                                       *Sent via email only*
**dkl@marketvw.com**
MarketView Resources
149 Esplanade, Suite 100
Mt. Vernon, NY 10553

Re:   STAR Processing Agreement with STAR Processing, Inc.
      Notice of Termination and Outstanding Collections Balance

Dear Mr. Lawrence:

This letter follows my September 13, 2019 correspondence (enclosed) which provided you (1)
notice of MarketView Resources' breach under the STAR Processing Agreement with STAR
Processing, Inc. (now known as First Data Processing, Inc.) (the "Agreement") and (2)
demanded payment in full of an outstanding Settlement Obligation of $88,807.17 within ten
days. In that letter we advised if MarketView failed to cure the outstanding Settlement Obligation
in the time stated we would, among other actions, no longer fund transactions transmitted to us
and terminate the Agreement.

As of today's date, MarketView has failed to reconcile the breach and to reimburse in full First
Data Processing, Inc. the Settlement Obligation. Accordingly, as of 3 p.m. EST today, STAR will
not be funding transactions transmitted to us by MarketView, we are removing MarketView's
access to its card transactions and the Agreement is terminated.

At this time, we recommend MarketView immediately notify its cardholder clients of the
termination and make arrangements to fund its clients so those cardholders can address any
funding issues with their respective employers. Please note, if any affected cardholders do
contact First Data Processing, Inc. regarding their access to funds on their respective cards, an
explanation of these events will be provided.

Finally, MarketView's outstanding Settlement Obligation of $88,807.17 remains due and owing.
MarketView's continued failure to resolve this Settlement Obligation may subject MarketView to
further legal action to secure First Data Processing's rights under the Agreement. If you wish to
make payment, you may immediately contact me as noted below or Scott Trevino at (760) 712-
2563 or Christopher.Trevino@firstdata.com.

This letter is not a waiver of First Data Processing's rights under the Agreement or applicable
law, and First Data Processing reserves all rights under the Agreement and applicable law.
PLEASE GOVERN YOURSELF ACCORDINGLY.

Sincerely,

/s/ Bram A. Maravent
Associate Counsel
(954) 845-4261
Bram.Maravent@Fiserv.com

Enclosure

FISERV CONFIDENTIAL                                  10329650-FISV-000339
                                                    USAO-MKVW_008422

J.A. 3165

Pay Pal Digital Transactions

MarketView Debit Card Transactions For 09/25/2019

| AccountId | Amount | Fee | C/D | Type | Date | Time | Location | |
|---|---|---|---|---|---|---|---|---|
| 4449008464 | $41.18 | $0.75 | D | POS | 09/24/2019 | 15:05 | RITE AID STORE | VIRGINIA BEACVA |
| 4449021664 | $35.00 | $7.00 | D | EXT | 09/25/2019 | 06:33 | PAYPAL PREAUTHORIZATION | |
| 4449023566 | $202.50 | $2.50 | D | ATM | 09/24/2019 | 15:13 | 7025 SUDLEY RD | MANASSAS VA |
| 4449027955 | $90.00 | $7.00 | D | EXT | 09/25/2019 | 15:28 | PAYPAL PREAUTHORIZATION | |
| 4449028375 | $0.00 | $0.75 | | ATM | 09/24/2019 | 15:12 | 4377 HOLLAND RD | VIRGINIA BCH VA |
| 4449028375 | $410.00 | $2.50 | D | ATM | 09/24/2019 | 15:13 | 4377 HOLLAND RD | VIRGINIA BCH VA |

9/25/2019

9/25/2019

Case 3:25-cv-01036-MHL-MRC Document 1-1 Filed 12/18/25 Page 29 of 34 PageID# 42

Exhibit No. 15B

**Gary Carter**

| | |
|---|---|
| **From:** | Gary Carter |
| **Sent:** | Monday, September 30, 2019 4:20 PM |
| **To:** | Derickson K. Lawrence |
| **Subject:** | List of deliverables |

Derickson:

Just to be absolutely clear on our conversation from last Friday, I want to document precisely the items I requested from you so there is no confusion as to what is expected.

My goal is to write checks to everyone who has a pay card account balance to make them whole, and obviously, time is of the essence.

Here's what I need from you by Wednesday at 5pm:

1. For ALL pay card holders, both current and former employees, a data file or files that together contain the name, address, phone, and account balances representing the amounts that are due each cardholder. I understand that some cardholders have signed up for PayPal access and may have transferred amounts from the card to PayPal after the service interruption and I will need the balances to already reflect those deductions, or I will need the detail in order to make the adjustments myself. It must be clear to me what amount I am paying each cardholder. Be sure I have enough detail to meet that objective.
2. You can send the address and phone information in a separate file if necessary.
3. A cash transfer from you to our direct deposit account in an amount equaling the total of the account balances in the data file above.
4. We have already paid out some employee's balances by check in the last 72 hours – be sure to properly reflect those payments in your totals, I believe Pam has given you a list.
5. If there are other details that I need to complete this objective but have failed to request, be sure to include them.

Please acknowledge by return email that you received this note and that you intend to deliver these items by 5pm Wednesday 10/02.

On a separate note, we will need total and full access to the account detail on the website of all cardholders so we can verify information going forward.

Derickson, I know this is a difficult situation for you but keep in mind I have the most to lose here, so I am hopeful that we'll be able to work together to mitigate any further inconvenience to the employees, and make this situation as painless as possible for each of us.

Call with questions.

*Gary W. Carter, CPA*
Senior Vice-President
Finance and Administration
BOTH Management Services, Inc.

GOVERNMENT
EXHIBIT
**28**
2:23cr89

1

USAO-MKVW_000284

**J.A. 1413**



**PRESS RELEASE**

# Restaurant management company settles False Claims Act allegations involving Paycheck Protection loan

Wednesday, May 28, 2025

**For Immediate Release**

U.S. Attorney's Office, Eastern District of Virginia

ALEXANDRIA, Va. – Both Management Services, Inc., located in Virginia Beach, has agreed to pay $750,000 to settle False Claims Act allegations that it certified that it was eligible to receive first and second draw loans under the Paycheck Protection Program (PPP) for which it was not eligible.

The PPP offered loans to eligible small businesses for economic relief during the COVID-19 pandemic. Only businesses with fewer than 500 employees (or fewer than an industry-based size standard, if applicable) were eligible for PPP loans. Under the Small Business Administration's "affiliation rules," businesses under common ownership or control were required to add their employee counts together when determining their size for purposes of eligibility. The PPP allowed certain eligible borrowers that previously received a PPP loan to apply for a second draw PPP loan with the same general loan terms as their first draw PPP loan.

The settlement began with a lawsuit involving Both Management Services, Inc.'s second draw PPP loan, *United States ex rel. Verity Investigation, LLC v. Both Management Services, Inc.,* , which was filed under the whistleblower provision of the False Claims Act.

Exhibit No. 17 - 1

## DRAFT SERVICES AGREEMENT

This Agreement is made this ~~10~~ th~~-~~ day of ~~June~~ne, 2004, by and between MarketView Resources, Inc., a New York Corporation (hereinafter referred to as "MARKETVIEW") and BOTH, Inc. a Virginia Corporation dba Golden Corral (hereinafter referred to as "Golden Corral").

WHEREAS MARKETVIEW is in the business of providing enhanced debit cards and related online enhancements (the "Card Services"); and

WHEREAS Golden Corral is a franchised restaurant chain currently serving the three states of Maryland, Virginia and Georgia.

WHEREAS Golden Corral wishes to have the ability to offer Direct Deposit to its entire employee base across those three states, and for the employees who do not have bank accounts, wishes to use the MarketView Premier Card Services and specifically the direct deposit feature thereof;

Now THEREFORE, in consideration of mutual premise contained herein, MarketView and Golden Corral agree as follows:

1. MARKETVIEW will offer Direct Deposit and its Premier Card Services, which will include electronic pay stubs (through touch screen terminals placed in Golden Corral's restaurants ("Kiosks")), to all employees of Golden Corral as requested by Golden Corral and will provide, in accordance with its usual terms and conditions and quality standards, Premier Card Services to those hourly and management employees who accept the offer of Card Services (the "Cardholders").

2. Golden Corral will provide, via MarketView's web site or electronically, the names and attributes of ~~the~~ its employees ~~of the Customers~~ as required to initiate Direct Deposit and Card Services for those employees.

3. MARKETVIEW will provide an 866 number (active during the hours of 9:00 AM to 5:00 PM) to address Cardholders' customer service issues and a 24 hour automated 800 number for access to Cardholders' account information, as well as to perform fund transfers.

4. MARKETVIEW will not bill Golden Corral, or the Cardholders a monthly or setup fee for issuance of the debit cards. MARKETVIEW will charge the Cardholders a range of transaction fees (e.g. withdrawal fees, POS fees, etc. (Attachment A)) as established from time to time in agreements with the Cardholders. However, MARKETVIEW will allow for one free withdrawal transaction per month, per cardholder. MARKETVIEW will fully comply with South Carolina's direct deposit payment regulations when Golden Corral opens its first store and begins paying employees in that state. In addition, at that time, MARKETVIEW will amend its existing Golden Corral payment policy in the states of Georgia, Maryland, and Virginia to be consistent with that of South Carolina.

5. MARKETVIEW will initiate this project with the Direct Deposit service for management employees; then followed by a pilot of the Premier Card services at two locations chosen by Golden Corral,. The full service~~, including Kiosks~~, will then be rolled out based on the implementation plan which will be developed by mutual agreement of the parties during or at the conclusion of the pilot. Electronic Stubs will be initiated after the rollout of the card service to all 17 locations.

6. Provided that the submission of the ACH is executed 72 hrs prior to the effective date specified by Golden Corral, MARKETVIEW will provide the delivery of Direct Deposit funds to all employees~~the cardholders~~ by as soon as practicable after 12:~~05~~01 AM of the effective date, ~~provided that the submission of the ACH is executed 76 hrs prior to the effective date. MARKETVIEW guarantees delivery, however,~~ ~~by~~ but in no event later than 12:00 Noon of the effective date.

7. Term of Agreement: The term of this Agreement shall commence on the date this agreement is executed and shall continue for a period of _____ years unless earlier terminated pursuant to Paragraph ~~7~~ 8 below. This Agreement shall automatically renew for a period of __years unless written notice is given to the other party at least 60 days prior to the end of the then current term.

8. Termination of Agreement: This Agreement may be terminated by either party if the other party has (a) damaged or injured the business or good will of the other through willful misconduct or gross negligence, or (b) breached this Agreement, and failed to cure such breach, within 90 days of having been given notice

**Debit Card Service Agreement**    **MarketView/Golden Corral**                          Page 1

USAO-MKVW_007382

J.A. 1381

*Exhibit No 17-2*

thereof.

9. Promotion Support Agreement: Golden Corral (BOTH, Inc.) will sponsor and help to promote MARKETVIEW as its sole provider of debit card services to Golden Corral Corporate and other Golden Corral franchisees. This will be accomplished by a letter of reference and our willingness to respond to reference inquiries. At no time will we reveal the financial agreement between BOTH, Inc. and MARKETVIEW. This Promotion Support Agreement is, of course, dependent upon the successful implementation of the Premier Card Service to all of our operating entities.

~~Promotion Support Agreement: Golden Corral will sponsor and help to promote MARKETVIEW as its sole provider of debit card services to other Golden Corral franchises, including underwriting the cost of MARKETVIEW's booth at its upcoming and future Golden Corral franchisee exhibitions.~~

10. Non Disclosure of Information: Each of the parties, during the term of this Agreement, will have access to and become familiar with confidential information concerning the business and affairs of the other party, including but not limited to, marketing methods, and financial information. Neither party shall disclose any confidential information received from the other party without the other party's consent. Upon the termination of this Agreement, each party shall immediately return all confidential information received from the other party.

11. Entire Agreement; Amendment and Waiver: This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby, and this Agreement supersedes in all respects all written or oral understandings and agreements heretofore existing between the parties hereto. This Agreement may not be modified or amended except by an instrument in writing duly executed by the parties hereto. No waiver of compliance with any provision or condition hereof and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party hereto sought to be charged with such waiver or consent.

12. Limitation of Liability: Neither party shall be liable to the other for any incidental, indirect, consequential, or exemplary damages or for any lost profits, revenues, goodwill or savings arising out of or in connection with this Agreement, or resulting from the use or performance of any product or service referred to herein, whether in an action for breach of contract, tort, including negligence, indemnity or strict liability. This provision shall survive failure of an exclusive or limited remedy.

13. Notices and requests required or permitted hereunder shall be deemed to be delivered hereunder if mailed with postage prepaid or delivered, in writing to the addresses as listed below.

14. Force Majeure: Neither party shall be responsible for any delay in or failure of performance to the extent caused by fire, strike, embargo, explosion, earthquake, flood, war, acts of God, or other causes beyond a party's reasonable control.

154. This Agreement has been negotiated and prepared and shall be performed in the State of New York, and the validity, construction and enforcement of, and the remedies under, this Agreement shall be governed in accordance with the laws of the State of New York, venue being in Westchester County, New York.

165. The invalidity or unenforceability of any particular provision hereof shall not affect the remaining provisions of this Agreement, and this Agreement shall be construed in all respects as if such invalid or enforceable provision were omitted.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed by their authorized representatives on the date first above written.

MarketView Resources Inc.
149 The Esplanade, Suite 100
Mt. Vernon, NY 10553

BOTH, Inc. dba Golden Corral
1453 Kempsville Road, Suite 107
Virginia Beach, Virginia 23464

By: _____

By: _____

Name: Derickson K. Lawrence

Name:

**Debit Card Service Agreement**     **MarketView/Golden Corral**                                    Page 2

USAO-MKVW_007383

J.A. 1382

::
;;

## CERTIFICATE OF SERVICE

I, Derickson Lawrence, certify that as of November 25, 2025, I caused a copy of the complaint

with exhibits to be sent  via U.S. Mail to the following:

1) Fiserv
   Corporate Legal Department
   Attn: Mr. Bram Mavarent, Esq.
   4000 Cora Ridge Drive
   Coral Springs, FL 33065

2) Both Inc. dba Golden Corral
   1453 Kempsville Rd. #107
   Virginia Beach, VA 23464
   Attn: Houston Odom, Jr. President

Derickson Lawrence, Reg Id.71243-510

FCI Butner Medium 1
PO Box 1000
Butner, NC 27509--0000